**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| WILLIAM HARRIS, | ) | |
| | ) | |
| Plaintiff, | ) | 2:15-cv-1493 |
| v. | ) | |
| | ) | |
| POSKA, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM ORDER

This is a pro se prisoner civil rights case. Plaintiff William Harris has named twenty employees of the Pennsylvania Department of Corrections and Alice Maksin, a nurse-practitioner at SCI-Fayette, as Defendants in his Amended Complaint (ECF No. 55). Now pending before the Court are: (1) the CORRECTIONS DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT (ECF No. 56); and (2) a MOTION TO DISMISS (ECF No. 60) filed separately by Defendant Maksin. Defendants have filed briefs in support of their positions (ECF Nos. 57, 61); and Plaintiff has filed a response in opposition to the motions (ECF No. 67). The motions are now ripe for disposition.

Factual and Procedural Background

On June 15, 2016, the Court granted Plaintiff "one last chance" to file a complete amended complaint which complied with its specific instructions regarding a proper caption, jurisdiction, identification of parties, statement of claims, statement of facts, his injuries, previous lawsuits, the exhaustion of administrative remedies, a request for relief, and a declaration under penalty of perjury. *See* ECF No. 49.

In the Amended Complaint, Harris sets forth nine separate claims:

1. Harris alleges that on March 17, 2015, he was placed in cell LB-2022 at SCI-Fayette, which had a steel bed frame that had been intentionally bent into a hammock shape. Harris avers that the bed frame had been knowingly kept in that bent condition since 2012, and that the bed frame was used as a "torture device" to punish inmates who were recalcitrant, had assaulted staff members, or had dared to raise complaints. Harris alleges that he has a surgically-rebuilt hip and arm, vertigo and damaged knees, and would be further injured by sleeping on the bent bed frame. Harris remained in cell LB-2022 until March 23, 2015, when he was moved to cell JD-2019. Harris alleges that cell JD-2019 also had a bent ("hammocked") bed frame. Harris remained in cell JD-2019 for two more nights, during which he slept on the floor. Harris alleges that Defendant Poska placed him in cell LB-2022; that Defendant Parker refused to move him that evening; that Defendants Burton and Rohal refused to move him into a habitable cell; and that various Defendants in "management and supervisory roles" (Buzas, Switzer, Walker, Dobish, Coleman, Nickelson, Gates and Armel) knew of the bent bed frame and turned a "blind eye" to it.
2. Harris alleges that on April 14, 2015, upon his release from the Restricted Housing Unit ("RHU"), he was forced to walk a quarter-mile to a general population unit in worn-out boots belonging to another inmate that were two sizes too small. Defendants Rohal and Poska allegedly withheld his doctor-prescribed orthopedic boots; and Defendant Roberts threatened Harris with an additional 30 days in the RHU if he did not walk in the ill-fitting boots.
3. Harris alleges that Defendants Berrier and Maksin arbitrarily restricted him from being employed in the dietary department because he wore elastic knee braces for bad

knees and could not work on wet floors, while permitting a one-legged amputee (above the knee) to work in dietary while wearing a prosthetic. Harris alleges a violation of Equal Protection because he is black and the amputee is white.

4. Harris alleges that on March 18, 2015, SCI-Fayette employees Skrobacz and Poska issued a false Class 1 misconduct report against him, in retaliation for Harris exercising his rights by filing grievances and a lawsuit while he was at SCI-Somerset. The Court takes judicial notice that Harris filed a lawsuit, <u>Harris v. Hyde, et al.</u>, Civil Action No. 15-cv-039, on February 13, 2015.[1] Harris explains: "On 20 March 2015 no grievance was yet processed at SCI-Fayette so the officer who told me the disciplinary punishment sanctions were for filing grievance could only be the grievances filed at SCI-Somerset." Amended Complaint at 9. Harris also alleges that Defendants Smith and Wentzel denied him the opportunity to attend the disciplinary hearing regarding this misconduct report by falsely stating that he refused to attend it. Harris alleges that he suffered various consequences due to being found guilty of the misconduct (loss of personal property – legal papers, loss of opportunity to be transferred within the prison system to his home region, and prevented from obtaining a job for 60 days).

5. Harris alleges that an unknown officer mistakenly delivered Deputy Superintendent Gates' copies of the disciplinary hearing results to his cell.

6. Harris alleges that on March 6, 2015, while at SCI-Somerset, he was told by Defendant Wadsworth that he was being sent back to SCI-Fayette. Harris alleges that

---

[1] <u>Harris v. Hyde</u> is also assigned to this member of the Court. The only person named as a Defendant in both cases is Trevor Wingard, the Superintendent of SCI-Somerset.

the decision by Defendants Wadsworth and Wingard of SCI-Somerset to transfer him back was made in retaliation for the grievances and lawsuit Harris filed while at SCI-Somerset. Harris avers that he suffered additional retaliatory actions upon his arrival at SCI-Fayette, as described above.

7. Harris alleges that he has hypertension, a life-threatening condition that requires daily doses of medication to regulate his blood pressure and heart rhythm. He alleges that Defendant Maksin intentionally placed his life in imminent danger by denying and delaying his prescribed medications because he had not been assessed. Harris had refused for months to be seen by Maksin. Harris was without his medication from December 31, 2015 until January 3, 2016, when it was re-ordered by Dr. Herbik. Harris alleges that Defendant Berrier knew of Maksin's (in)action and "did nothing."

8. This "claim" is a factual supplement to Harris' first claim regarding the bent bed frames. Harris alleges that supervisory officials were aware of his health conditions, but purposely placed him in those cells with deliberate indifference to the risks to his health.

9. Harris alleges that Defendant House has refused to process non-frivolous grievance claims. Harris contends that his access to the federal courts is being denied because he is unable to exhaust his state remedies.

Standard of Review

A motion to dismiss pursuant to Rule 12(b)(6) challenges the legal sufficiency of a complaint, which may be dismissed for the "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Upon review of a motion to dismiss, the Court must accept

all well-pleaded facts and allegations, and must draw all reasonable inferences therefrom in favor of the plaintiff. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 220 (3d Cir. 2011), *cert. denied*, 132 S. Ct. 1861 (2012) (citing *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010)). However, as the Supreme Court of the United States has made clear in *Bell Atlantic Corp. v. Twombly*, such "[f]actual allegations must be enough to raise a right to relief above the speculative level." 550 U.S. 554, 555 (2007).

The Supreme Court later refined this approach in *Ashcroft v. Iqbal*, emphasizing the requirement that a complaint must state a plausible claim for relief in order to survive a motion to dismiss. 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 555). Nevertheless, "the plausibility standard is not akin to a 'probability requirement,'" but requires a plaintiff to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 555).

To determine the legal sufficiency of a complaint after *Twombly* and *Iqbal,* the United States Court of Appeals for the Third Circuit instructs that a district court must take a three step approach when presented with a motion to dismiss for failure to state a claim. *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 n.7 (3d Cir. 2010) (noting that although *Iqbal* describes the process as a "two-pronged approach," it views the case as outlining three steps) (citing *Iqbal*, 556 U.S. at 675). First, "the court must "tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* at 130 (quoting *Iqbal*, 556 U.S. at 675) (alteration in original). Second, the court "should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679). Third, "'where there

5

are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'" *Id.*

Accordingly, the Court must separate the factual and legal elements of the claim and "accept the factual allegations contained in the Complaint as true, but [ ] disregard rote recitals of the elements of a cause of action, legal conclusions, and mere conclusory statements." *James v. City of Wilkes-Barre*, 700 F.3d 675, 679 (3d Cir. 2012) (citing *Iqbal*, 556 U.S. at 678-79; *Twombly*, 550 U.S. at 555-57; *Burtch*, 662 F.3d at 220-21). The Court "must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.' In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009) (citing *Iqbal* 556 U.S. at 678). The determination for "plausibility" will be "'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Id*. at 211 (quoting *Iqbal*, 556 U.S. at 679).

However, nothing in *Twombly* or *Iqbal* changed the other pleading standards for a motion to dismiss pursuant to Rule 12(b)(6) and the requirements of Rule 8 must still be met. *See Phillips v. Co. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (internal citations omitted). The Supreme Court did not abolish the Rule 12(b)(6) requirement that "the facts must be taken as true and a complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on those merits." *Phillips,* 515 F.3d at 231 (citing *Twombly*, 550 U.S. at 553). Rule 8 also still requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 677-78 (citing Fed. R. Civ. P. 8(a)(2)). While this standard "does not require 'detailed factual allegations,' [ ] it demands more than an unadorned, the-defendant-unlawfully-harmed-me

6

accusation" and a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 679 (quoting *Twombly*, 550 U.S. at 544-55).  Simply put, Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79.

Legal Analysis

As an initial matter, the Amended Complaint purports to state claims against each of the named Defendants "both individually and in their official capacities."  However, it is well-settled that "the Eleventh Amendment proscribes actions in the federal courts against states, their agencies, and state officials acting within their official capacities."  *Beale v. Wetzel*, 2015 WL 2449622, at *4 (W.D. Pa. May 21, 2015) (citations omitted).  The Corrections Defendants share in the Commonwealth's Eleventh Amendment immunity to the extent that they were sued in their official capacities.  *Id*.  Harris has confirmed in his Response that he is suing Defendants in their individual capacities only.

General Legal Principles

As explained in *Chavarriaga v. New Jersey Dep't of Corr.*, 806 F.3d 210 (3d Cir. 2015) (involving claims by an inmate transferred to a different prison in retaliation for filing a lawsuit against prison officials), the first step in evaluating a § 1983 claim by an inmate is to identify the exact contours of the alleged underlying right to determine whether Plaintiff has alleged a deprivation of a constitutional right at all.  *Id*. at 222 (citations omitted).  A plaintiff "must portray specific conduct by state officials which violates some constitutional right."  *Id*.  Second, a plaintiff must demonstrate a defendant's "personal involvement" in the alleged violation, by

7

describing either the defendant's: (1) participation; or (2) his actual knowledge and acquiescence in the wrongful conduct. *Id.* (citing *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)). The defendant's knowledge must be actual, not constructive. *Id.* Moreover, it is "well established that the filing of a grievance is not sufficient to show the actual knowledge necessary for a defendant to be found personally involved in the alleged unlawful conduct." *Mearin v. Swartz*, 951 F. Supp.2d 776, 782 (W.D. Pa. 2013).

Liability cannot be based on the doctrine of *respondeat superior*. Although a supervisor cannot encourage constitutional violations, a supervisor has "no affirmative constitutional duty to train, supervise or discipline so as to prevent such conduct." *Brown v. Grabowski*, 922 F.2d 1097, 1120 (3d Cir. 1990). To set forth a claim for supervisory liability under § 1983, an inmate must: (1) identify the specific supervisory practice or procedure that the supervisor failed to employ, and show that (2) the existing custom and practice without the identified, absent custom or procedure created an unreasonable risk of the ultimate injury, (3) the supervisor was aware that this unreasonable risk existed, (4) the supervisor was indifferent to the risk; and (5) the underlying violation resulted from the supervisor's failure to employ that supervisory practice or procedure. *Chavarriaga*, 806 F.3d at 227 (citation omitted). In other words, the inmate must identify the supervisor's specific acts or omissions demonstrating the supervisor's deliberate indifference to the inmate's risk of injury and must establish a link between the supervisor, the act, and the injury. *Id.*

Several of Harris' claims are based on the ban on "cruel and unusual punishment" in the Eight Amendment of the United States Constitution. It is well-established that the Constitution "does not mandate comfortable prisons." *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). An inmate's claim does not rise to the level of an Eighth Amendment violation unless: (1) the prison

official deprived the prisoner of the minimal civilized measure of life's necessities; and (2) the prison official acted with deliberate indifference in doing so, thereby exposing the inmate to a substantial risk of serious damage to his future health. *Farmer v. Brennan*, 511 U.S. 825, 843 (1994). An inmate seeking to prove that she has been subjected to an Eighth Amendment violation therefore must make both an objective and a subjective showing to impose liability on a defendant. Objectively, an inmate must show that the deprivation was "sufficiently serious" so that it reached the level of an Eighth Amendment violation. Subjectively, an inmate must show that the defendant acted with "deliberate indifference" to her health or safety. *Chavarriaga*, 806 F.3d at 226 (citation omitted).

In order to establish a claim for retaliation under the First Amendment, an inmate must demonstrate: (1) that he engaged in constitutionally protected conduct; (2) that an adverse action was taken against him by a prison official; and (3) that there is a causal connection between the exercise of his constitutional rights and the adverse action. *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003). With this background, the Court will now address each of Harris' claims.

1. Bent Bed Frames

Harris alleges that he endured hammocked bed frames in two different cells from March 17-25, 2015. Numerous courts have rejected similar claims involving short-term exposure to defective bedding. *See Hernandez-Tirado v. Lowe*, 2015 WL 5695656, at *7 (M.D. Pa. Aug. 13, 2015), *report and recommendation adopted*, 2015 WL 5697361 (M.D. Pa. Sept. 23, 2015) (collecting cases); *West v. Emig*, 2015 WL 4511012, at *4 (D. Del. July 24, 2015) (denial of bedding "for only a few days or weeks" does not violate constitution). In *Stephens v. Cottey*, 145 F. App'x 179, 181 (7th Cir. Aug.11, 2005), the Court held that forcing an inmate to spend three days sleeping on a metal bed frame without a mattress and five days with no bed frame sleeping

9

on the floor did not constitute a constitutional violation. The alleged torturous bed frames in this case do not arise to a violation and this claim is DISMISSED.

   2. Wrong Size Boots

Harris alleges that he was forced to walk a quarter-mile in worn-out boots belonging to another inmate that were two sizes too small when his "orthopedic" boots were taken away. This discreet, short-term discomfort does not rise to an Eighth Amendment violation. Moreover, Harris has failed to plead that his orthopedic boots were medically necessary, that Defendants were aware of that necessity, or that the denial of access to his boots was objectively and subjectively improper. *Cf. Green v. Corzine*, 2009 WL 1323574 (D.N.J. 2009) (prisoner stated cognizable claim where he had been prescribed extra-wide boots by multiple physicians but prison officials continually refused to provide them for budgetary reasons, causing such severe injuries that he could not go to mess hall). This claim is DISMISSED.

   3. Medical Restriction on Working in Dietary Department

Harris has no cognizable right to get a job in the dietary department. As the Court explained in *Wright v. O'Hara*: "We do not believe that an inmate's expectation of keeping a particular prison job amounts either to a 'property' or 'liberty' interest entitled to protection under the due process clause." 2002 WL 1870479, at *5 (E.D. Pa. Aug. 14, 2002) (quoting *Bryan v. Werner*, 516 F.2d 233, 240 (1975), citing *Board of Regents v. Roth*, 408 U.S. 564 (1972)); *see also James v. Quinlan*, 866 F.2d 627, 630 (3d Cir. 1989) ("Traditionally, prisoners have had no entitlement to a specific job, or even to any job."). Moreover, there is no plausible indication that Defendants' actions were racially motivated at all. Harris pled in the Amended Complaint that Maksin imposed the job restriction because of his bad knees. His allegation of a white amputee comparator fails because Harris has not pled that Maksin was the decision-maker in

letting the alleged comparator work in the dietary department. *See Hernandez v. New York*, 500 U.S. 352, 360 (1991) (Plaintiff must show that decision-maker acted with a discriminatory purpose). Harris' claim of race discrimination is pure speculation. This claim is DISMISSED.

    4. False Misconduct Report/Attendance at Disciplinary Hearing

In construing the Amended Complaint generously and in the light most favorable to the pro se Plaintiff, the Court has identified two distinct legal theories in this claim. First, Harris alleges that Defendants Skrobacz and Poska retaliated by filing false misconduct reports against him. Second, Harris alleges that Defendants Smith and Wentzel prevented him from attending his disciplinary hearing. The Court will address each of these theories separately.

Defendants concede that Harris can establish the first two prongs of a retaliation claim, but argue that he has failed to plead a plausible causal connection. The Court agrees with Defendants. The grievances were filed prior to January 30, 2015 and the Harris v. Hyde lawsuit was filed on February 13, 2015, while Harris was incarcerated at SCI-Somerset. The alleged retaliatory actions occurred on March 18 and 20, 2015, by officers at SCI-Fayette. Neither Skrobacz nor Poska is named in the grievances or lawsuit, and there is no averment that they were even aware of them. Thus, it is pure speculation that Harris' filing of unspecified grievances and a lawsuit at SCI-Somerset was causally connected to the alleged false misconducts filed by Skrobacz and Poska at SCI-Fayette more than one month later. This claim is DISMISSED.

Harris' other theory, that he was denied his right to defend himself in his disciplinary hearing, is also not cognizable. He alleges that Defendants Smith and Wentzel falsely stated that he did not want to attend the hearing, and as a result he was found guilty and suffered loss of personal property (legal papers), loss of an opportunity to be transferred to a prison in his home

region, and loss of a right to get a prison job for sixty days. It is well established that "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). In analyzing any procedural due process claim of this type, "the first step is to determine whether the nature of the interest is one within the contemplation of the 'liberty or property' language of the Fourteenth Amendment." *Shoats v. Horn*, 213 F.3d 140, 143 (3d Cir. 2000) (*citing Fuentes v. Shevin*, 407 U.S. 67 (1972)).

Harris has failed to meet this threshold requirement. An alleged loss of personal property cannot support a due process claim because an adequate post-deprivation state remedy exists through the prison system's grievance procedure. *Nicholson v. Carroll*, 390 F. Supp. 2d 429, 435 (D. Del. 2005) (citations omitted). Also, Harris has no constitutional right to be transferred to a prison in his home region. *King v. Gilmore*, 2016 WL 5122031 (W.D. Pa. Aug. 25, 2016) (citations omitted). Finally, as noted above, Harris has no constitutional interest in a prison job. *See also Nicholson*, 390 F. Supp.2d at 435. Because Harris has failed to articulate a constitutionally protected liberty or property interest, he was not entitled to any procedural due process. Accordingly, this claim is DISMISSED.

5. Delivery of Wrong Grievance Documents

Harris' fifth "claim" is that an unknown officer delivered Deputy Superintendent Gates' copies of grievance documents. Harris does not articulate a legal theory or identify a defendant. It appears that he intended this paragraph to be merely factual. To the extent that Plaintiff is asserting a distinct claim, it is DISMISSED.

6. Retaliatory Transfer to SCI-Fayette

In his sixth claim, Harris challenges his transfer from SCI-Somerset to SCI-Fayette. Harris cannot succeed on a due process claim based on his transfer to a less-favorable prison because an inmate does not have the right to "be placed in any particular prison." *Chavarriaga*, 806 F.3d at 225. However, Harris may be able to succeed on a retaliation theory, even if he cannot prove any damages. "[G]overnment actions which standing alone do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for the exercise of a constitutional right." *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001); *accord Mitchell*, 318 F.3d at 530. Defendants concede that filing grievances and a lawsuit constitute protected activity. In *Rauser*, the Court affirmed that a "transfer[ ] to a distant prison where his family could not visit him regularly" would constitute an adverse action. *Id*. Harris has pled a plausible causal connection because he alleges that the efforts to transfer him to SCI-Fayette occurred on or before March 6, 2015, within three weeks of the filing of his federal lawsuit. In stark contrast to the retaliation claims against SCI-Fayette personnel (discussed above), Defendants Wadsworth and Wingard are located at SCI-Somerset and Plaintiff has plausibly pled that both of them were aware of the lawsuit and were personally involved in the transfer. Indeed, Wingard was named as a Defendant in the Harris v. Hyde lawsuit. Accordingly, this claim survives as to Defendants Wadsworth and Wingard. Because Harris has no right to be placed at any particular institution, it appears that he will not be able to recover compensatory damages.

7. Delay in Receiving Hypertension Medication

Harris has failed to show that the alleged delay in providing his hypertension medication constitutes a deliberate indifference to his medical condition that arises to an Eighth Amendment

violation.[2] The Court notes that it previously denied Harris' motion for a preliminary injunction or temporary restraining order on this claim (ECF No. 54). The Amended Complaint acknowledges that Harris refused to be seen by Maksin. This is not a case in which Maksin refused to treat Harris – instead, Harris refused to be treated by Maksin. *See Jenkins v. Berrier*, 2016 WL 4940038, at *4 (W.D. Pa. July 27, 2016), *report and recommendation adopted*, 2016 WL 4803806 (W.D. Pa. Sept. 14, 2016) ("it is well established that an inmate does not have a constitutional right to see a doctor on demand or the doctor of his choice.") (citations omitted). Further, the Amended Complaint recognizes that Maksin provided a reason for her refusal to issue more medication – namely, that Harris had not been assessed. Finally, the Amended Complaint avers that Harris obtained his medication within three days. This was a one-time, very short delay in the provision of medication – a situation caused at least in part by Harris himself. There is simply no plausible allegation that Defendants Maksin or Berrier deliberately refused to file Harris' prescription to inflict unnecessary and wanton pain. In *Byrd v. Shannon*, 715 F.3d 117, 127-28 (3d Cir. 2013), the Court of Appeals rejected a deliberate indifference claim against prison officials when an inmate did not receive his glaucoma eye drops for six weeks after his prescription expired. This claim is DISMISSED.

---

[2] Defendant Maksin first contends that Harris lacks standing because he has failed to plead any cognizable injury in fact. The Court cannot agree. Harris has pled that he suffered aggravated migraine headaches, vertigo, dizziness and sleep deprivation due to elevated blood pressure from the denial of his medication. In addition, the Court will not consider the recitation of additional facts submitted by counsel for Maksin in her brief, as this motion arises under Fed. R. Civ. P. 12(b)(6).

8. Bent Bed Frames

The eighth "claim" does not set out a distinct legal theory. Instead, it merely supplements the facts regarding his first claim based on the bent bed frames. To the extent that Harris is setting out a separate claim, it is DISMISSED.

9. Processing of Grievances

Finally, the ninth claim is based on the alleged refusal to process Harris' grievances. Harris cannot state a valid constitutional claim based on the alleged denials of rights in prison grievance proceedings. *See Emory v. Mooney*, 2016 WL 6780714, at *2-3 (M.D. Pa. Nov. 16, 2016) (and cases cited therein). His theory that Defendants prevented him from exhausting his administrative remedies is also without merit. In *Wheeler v. Beard*, 2005 WL 1840159, at *6 (E.D. Pa. Aug. 3, 2005), the Court rejected a similar argument that prison officials had refused to process grievances in order to prevent the inmate from exhausting his administrative remedies as required by the Prison Litigation Reform Act ("PLRA") and, thereby, to prevent him from gaining access to the federal courts. The Court explained that the exhaustion of administrative remedies is not a jurisdictional bar to filing suit, but instead is an affirmative defense that the defendants had not raised. The same analysis applies to this case. Harris has obviously been able to access the federal courts by filing the instant action and Defendants have not asserted that he failed to exhaust his administrative remedies. *Id*. at *7-8. Thus, this claim is DISMISSED.

Amendment of Complaint

The court must allow amendment by the plaintiff in civil rights cases brought under § 1983 before dismissing pursuant to Rule 12(b)(6), irrespective of whether it is requested, unless doing so would be "inequitable or futile." *Fletcher-Harlee Corp. v. Pote Concrete Contractors,*

*Inc.*, 482 F.3d 247, 251 (3d Cir. 2007); *see also Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004) (asserting that where a complaint is vulnerable to dismissal pursuant to 12(b)(6), the district court must offer the opportunity to amend unless it would be inequitable or futile). We are cognizant of these holdings, but find that allowing for amendment by Plaintiff would be futile.

Conclusion

In accordance with the foregoing, the CORRECTIONS DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT (ECF No. 56) is **DENIED IN PART** as to the alleged retaliatory transfer claim against Defendants Wadsworth and Wingard; and **GRANTED** in all other respects. The MOTION TO DISMISS (ECF No. 60) filed by Defendant Alice Maksin is **GRANTED.** Defendants Poska, Parker, Coleman, Nickelson, House, Walker, Buzas, Skrobacz, Rohal, Smith, Gates, Armel, Burton, Switzer, Roberts, Dobish, Wentzel, Berrier, and Maksin are hereby **DISMISSED** from this case with prejudice.

SO ORDERED this 7th day of December, 2016.

BY THE COURT:

s/ Lisa Pupo Lenihan
United States Magistrate Judge

cc: All counsel of record
(Via CM/ECF)

William Harris
CX-7039
SCI-Fayette
50 Overlook Drive
LaBelle, PA 15450-0999
(Via US Mail)